IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00043-GPG

LEROY WALTER BAKER, #82907, aka LEROY W. BAKER,

    Plaintiff,

v.

RICK RAEMISCH, Director Dept. of Corrections,
JAMES FAULK, Warden Sterling Correctional Facility,
THE MEDICAL & FINANCIAL SERVICES OF S.C.F., and
ALL UNIDENTIFIED PERSONNEL RESPONSIBLE FOR WITHHOLDING PERSONAL
    PROPERTY WITHOUT JUST COMPENSATION,

    Defendants.

---

ORDER TO DISMISS IN PART
AND TO AMEND IN PART

---

**I. Background**

Plaintiff Leroy Walter Baker, #82907, aka Leroy W. Baker, is in the custody of the Colorado Department of Corrections (DOC) and currently is incarcerated at the Sterling Correctional Facility in Sterling, Colorado. Plaintiff initiated this action by filing *pro se* a Prisoner Complaint pursuant to 42 U.S.C. §§ 1981-1986, 42 U.S.C. § 12101 (ADA), 29 U.S.C. § 794 (ADA), *Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372 (10th Cir. 1981), *Collins v. Romer*, 962 F.2d 1508 (10th Cir. 1992). Plaintiff also filed a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 that has been granted.

Plaintiff asserts that Defendants have violated the Fifth, Eighth, and Fourteenth Amendments, the Colo. Const. art. II, § 15, and the DOC Administrative Regulation (AR) 1450, Ethical Code of Conduct, because they continue to charge him a $3 medical

copayment for each medical appointment he has that relates to his diabetic condition. Plaintiff seeks money damages.

## II. Analysis

The Court must construe the Complaint liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for *pro se* litigants. *See Hall*, 935 F.2d at 1110.

Subsection (e)(2)(B) of 28 U.S.C. § 1915 requires a court to dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The Court will dismiss this action in part as legally frivolous, for the reasons stated below.

### A. Eighth Amendment

First, the core areas entitled to protection by the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing. *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (citations omitted). Jail conditions are "sufficiently serious" if inmates are "incarcerated under conditions posing a substantial risk of serious harm." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (citing *Farmer*, 511 U.S. at 834) (quotations omitted). The Eighth Amendment is violated if prison officials act with deliberate indifference to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Deliberate indifference means that "a prison official may be held liable . . . only if he knows that inmates face a substantial risk

of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"The Eighth Amendment prohibits prison officials from denying an inmate medical treatment due to a lack of funds or conditioning the provision of needed medical services upon an inmate's ability to pay." *Cannon v. Mason*, 340 F. App'x 495, 498 (10th Cir. 2009) (citing *Martinez v. Zadroga*, 213 F. App'x 729, 732 (10th Cir.2007) (unpublished); *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir.1984)  As long as the state meets an inmate's serious medical needs, each state may determine whether a governmental entity or an inmate must pay the cost of medical services provided to the inmate. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983). 5)).  Plaintiff does not assert that he has been denied treatment for his diabetic related conditions, only that he is being charged $3 for a medical visit that concerns his diabetic condition.  Plaintiff, therefore, fails to state an Eighth Amendment violation, and the claim will be dismissed as legally frivolous.

**B.  ADA**

Plaintiff's ADA claim also is legally frivolous.  Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  To state a claim under Title II, a plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services,

programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).  Plaintiff does not state he has been excluded from participation in or denied benefits of a public entity's services, programs, or activities by having to pay a $3 medical co-payment.

### C. Due Process

The Fifth Amendment is applied to the states through the Fourteenth Amendment.  Plaintiff's denial of due process claim, therefore, is more properly asserted pursuant to the Fourteenth Amendment.  The United States Constitution guarantees due process when a person is deprived of life, liberty, or property.  *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  Plaintiff appears to assert either that he is being denied a liberty interest or a property interest in that Defendants are taking money from his inmate account for medical appointments.

Plaintiff's reliance on *Collins*, however, is misplaced for a finding that medical copayments were waived for diabetic related medical appointments.  The Tenth Circuit did not address whether the District of Colorado's findings were supported by the record because trial transcripts were not provided.  *Collins*, 962 F.2d at 1514.  The Tenth Circuit's only finding was that the 1987 statute was unconstitutional and the 1989 amendment was accordingly legally required.  *Id.*  Nothing in *Collins* supports Plaintiff's claims that since 1989 any medical copayment for diabetic related appointments is not required.

While *Collins* was pending, the Colorado General Assembly, in 1989, amended the medical copayment statute to exclude most medical services from the copayment prior to a trial on the merits.  *Collins*, 962 F.2d at 1510.  The 1989 amendment, effective

July 1, 1989, revised Colo. Rev. Stat. § 17-1-113 as follows:

> 17–1–113. Medical visits—charge to inmates
>
> The department shall charge three dollars against an inmate's account for each visit by such inmate to an institutional or noninstitutional physician, dentist, or optometrist; except that such charge shall not be assessed for any visit required by the department during the intake process, <<-or for->> an annual physical examination<<+, ANY VISIT INITIATED BY A MEDICAL OR MENTAL HEALTH STAFF MEMBER, ANY VISIT TO A PHYSICIAN, DENTIST, OR OPTOMETRIST RESULTING FROM A REFERRAL BY A NURSE OR PHYSICIAN ASSISTANT, ANY EMERGENCY TREATMENT, OR A FOLLOW-UP VISIT INITIATED BY A MEDICAL PROFESSIONAL+>>. No inmate shall be allowed to expend moneys from or incur charges against his account for his personal use until such medical charge has been deducted from his account.

Colo. Rev. Stat. § 17-1-113 has been amended three times since July 1,1989, on April 1, 1998, May 24, 2000, and August 5, 2008.  The Court has compared the amendments and finds nothing in the two earlier amendments that is substantively different than the most current revision effective August 5, 2008, especially with respect to Plaintiff's claim that since 1989 medical copayments for his diabetic related issues should be waived, which is not addressed in any of the amendments.  The current revision of § 17-1-113  provides for charging inmates a medical co-payment for medical services as follows:

> (1)(a) The general assembly hereby finds that the procedures for charging inmates a copayment for medical services are confusing to department personnel and, as a result, are inconsistently applied.
>
> (b) The general assembly therefore finds and determines that the department should establish clear and consistent written procedures concerning copayments for medical, dental, mental health, and optometric services rendered to or on behalf of inmates and should require the facilities rendering the services to comply with the procedures, including the maintenance of detailed records regarding the assessment of copayments.
>
> (2) The department shall assess a copayment, in an amount established by written procedures of the executive director pursuant to subsection (4) of this section, not to exceed five dollars per visit, against an inmate's

5

account for every inmate-initiated request for medical or mental health services provided to the inmate by a physician, physician's assistant, nurse practitioner, registered nurse, or licensed practical nurse. The department shall assess a copayment, in an amount established by written procedures of the executive director pursuant to subsection (4) of this section, against an inmate's account for every inmate-initiated visit by the inmate to a dentist or optometrist.  The amount of the copayment for the dental or optometric services need not be the same as the copayment for medical or mental health services.

(3) The department shall communicate the copayment procedures to every correctional facility that provides medical, dental, mental health, and optometric services to or on behalf of inmates to ensure that all department personnel consistently and regularly assess the required copayment.

(4) The executive director shall establish written procedures relating to medical, dental, mental health, and optometric service copayments, which procedures shall address, but need not be limited to, the following:

(a) The amount of the copayment to be assessed against an inmate's account for inmate-initiated medical services, including but not limited to mental health services, which copayment shall not exceed the direct and indirect costs associated with any type of medical or mental health service that may be rendered;

(b) The amount of the copayment to be assessed against an inmate's account for inmate-initiated dental and optometric services, which copayment shall not exceed the direct and indirect costs associated with any dental or optometric service that may be rendered;

(c) The detailed procedures that department personnel are to follow in assessing the copayments;

(d) The specific services for which a copayment will be assessed, waived, or reduced, as well as the specific and exclusive bases upon which a copayment may be waived by department personnel, including but not limited to the inmate's inability to pay the copayment, the health needs of the inmate and the public health and safety needs of the institution;

(e) The information to be obtained by department personnel at the time of the inmate's medical, dental, mental health, or optometric visit on a standardized department form, including the inmate's name, the inmate's identification number, the amount of the copayment assessed, if any, the reason for the visit, the type of service rendered, and the basis for any waiver of the copayment; and

> (f) The appropriate action that will be taken, consistent with state personnel rules, against department personnel who fail to comply with the copayment procedures.
>
> (5) The department shall monitor the information collected pursuant to paragraph (e) of subsection (4) of this section to ensure that the copayment procedures are bei

The DOC AR 700-30, effective January 1, 2012, however, does provide as follows:

> <u>Disabled Offenders</u>: All medical co-pays will be waived for any medical treatment related to a vision, hearing, or lower extremity mobility disability, and for medical treatment related to diabetes.  Offenders will be charged a co-pay for services not related to one of the above listed disability categories.  Health care professionals are required to verify the disability status of the offender and the clinical issue presented prior to charging for the service rendered.

DOC AR 700-30, IV. Procedures, A.9.  To the extent Plaintiff is asserting a Fourteenth Amendment claim, either as to a property or to a liberty interest regarding the medical copayment charges, the Court will direct Plaintiff to file an Amended Complaint, because the claims against Defendants Raemisch and Faulk are insufficient and the Medical and Financial Services at the Sterling Correctional Facility is an improperly named party.

To state a deprivation of his constitutional rights Plaintiff must explain (1) what a defendant did to him; (2) when the defendant did it; (3) how the defendant's action harmed him; and (4) what specific legal right the defendant violated.  *Nasious v. Two Unknown B.I.C.E. Agents*, 492  F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff also is directed that he must assert personal participation by a named defendant in the alleged constitutional violation.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal participation, Plaintiff must show how each named individual caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the

alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Supervisors can only be held liable for their own misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor cannot incur liability under § 1983 for his mere knowledge of a subordinate's wrongdoing. *Id.*; *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). Furthermore, when a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well. *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

Furthermore, Plaintiff cannot maintain claims against prison officials or administrators on the basis that they denied his grievances. The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*,

587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, No. 07-1425, 307 F. App'x. 179, 193 (10th Cir. Jan. 13, 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.") (internal quotation marks and citation omitted); *Davis v. Ark. Valley Corr. Facility*, No. 02-1486, 99 F. App'x. 838, 843 (10th Cir. May 20, 2004) (unpublished) (sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983").

Finally, § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). The Medical and Financial Services of the Sterling Correctional Facility is not a "person" subject to suit under § 1983. The Medical and Financial Services is a state entity and claims against this entity are barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

## IV. Conclusion

Accordingly, it is

ORDERED that the Eighth and ADA claims are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). It is

FURTHER ORDERED that Defendant Medical and Financial Services at Sterling Correctional Facility is dismissed as an improperly named party to this action. It is

9

FURTHER ORDERED that Plaintiff shall have thirty days from the date of this Order to file an Amended Complaint as directed above.  It is

FURTHER ORDERED that Plaintiff shall obtain the Court-approved Prisoner Complaint form (with the assistance of his case manager or the facility's legal assistant) along with the applicable instructions at www.cod.uscourts.gov, to be used in filing the Amended Complaint.  It is

FURTHER ORDERED that if Plaintiff fails to comply within the time allowed the Court will dismiss this action without further notice.

DATED at Denver, Colorado, this  9th  day of   March   , 2015.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, Senior Judge
United States District Court